UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRETON PETERSEN, Individually and on behalf of others similarly situated, | ) ) ) | Case No.: 1:08 CV 1217 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| THE CLEVELAND INSTITUTE OF ART, | ) ) ) | |
| Defendant | ) | ORDER |

Currently pending in the above-captioned case between Plaintiff Breton Petersen ("Plaintiff" or "Petersen") and Defendant Cleveland Institute of Art ("Defendant" or "Institute of Art") are: (1) Defendant's Motion for Summary Judgment (ECF No. 32); and (2) Plaintiff's Motion for Summary Judgment (ECF No. 34). For the following reasons, the court grants in part and denies in part Defendant's Motion and grants in part and denies in part Plaintiff's Motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that his former employer, the Institute of Art, did not pay Plaintiff and other

employees[1] for all hours worked and were not paid for any hours over 40 hours per week. (Am. Compl., ECF No. 16, at ¶ 1.) Plaintiff further alleges that he and other employees of the Institute of Art were "non-exempt" employees, which means that they were entitled to overtime wages under federal law. (*Id*.)

Plaintiff worked for the Institute of Art since August 2005 as a technical assistant, and he worked for the Institute of Art through June 2008. (*Id*., at ¶¶ 5, 9.) Plaintiff alleges that he was not paid for wages for hours over 30 per week from August 2005 through November 30, 2006. (*Id*., at ¶ 15(a).) Plaintiff further alleges that he was not paid for wages for weeks worked beyond 37 weeks for the 2005-2006 school year. (*Id*., at ¶ 15(b).) Plaintiff also alleges that he was not paid wages for all hours worked over 40 per week nor for any of his overtime work since he began work in August 2005. (*Id*., at ¶ 16.) He similarly alleges that the putative class members have not been paid any wages for hours worked over 40 per week, for any overtime work, or for work beyond the number of weeks specified in their contracts. (*Id*., at ¶ 22.)

Plaintiff makes the following claims: (1) violation of the Fair Labor Standards Act ("FLSA"); (2) injunction restraining Defendant from failing to pay Plaintiffs for all hours worked and for overtime wages; (3) overtime violations under Ohio law; and (4) breach of contract.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings,

---

[1] Plaintiff originally brought this action individually and as a putative representative for a collective action under Section 16 of the Fair Labor Standards Act, 29 U.S.C. § 216. In Plaintiff's Amended Complaint, he added that his claims were to be considered a class action under Federal Rule of Civil Procedure 23. (Am. Compl., ECF No. 16, at p. 1.)

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is

-3-

slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III.  LAW AND ANALYSIS

### A.  Fair Labor Standards Act

The FLSA requires covered employers to pay their employees at least one-and-one-half times their regular wage rate for hours the employees work in excess of forty hours in a given work week. 29 U.S.C. § 207(a)(1). The statute exempts from this requirement, however, "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendant argues that Plaintiff falls under either the administrative or executive exemption and is therefore not entitled to overtime wages.

The issue of how an employee spends his time at work is a question of fact. *Koppinger v. American Interiors, Inc.*, 295 F.Supp.2d 797, 800 (N.D.Ohio, 2003). However, whether an employee's particular activities exclude him or her from the overtime provisions of the FLSA is a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) ("The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law ..."); *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 691 (6th Cir. 2001). ("The

-4-

ultimate question of whether the magistrate judge correctly determined that an employee is exempt is a question of law that we review de novo."). The Institute of Art has the burden of showing that an employee is exempt. *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) In *Ale*, 269 F.3d at 691 n. 4, the Court stated that "[t]he defendant must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption." (quoting *Roney v. United States*, 790 F.Supp. 23, 26 (D.D.C.1992)); *see also Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 578 (6th Cir.2004) ("The exemptions to the FLSA's overtime provisions are to be narrowly construed against the employers seeking to assert [them], and the employer bears not only the burden of proof, but also the burden on each element of the claimed exemption.") (internal quotation marks and citations omitted). When evaluating whether an employee falls under the purview of one of the exceptions to the time and a half requirement, "courts cannot rely upon the plaintiff's or the employer's description of the plaintiff's position or authority; instead [the courts] 'must look at the plaintiff's actual duties' to determine whether he qualifies for an exemption." *Thomas v. Speedway SuperAmerica*, 506 F.3d 496, 503 (6th Cir. 2007) (quoting *Ale*, 269 F.3d at 692). .

Plaintiff was a technical assistant ("TA") for two departments, the Communications Design department, and the Industrial Design department, at the Institute of Art from August 2005 through June 2008. As part of Plaintiff's job, he worked with work-study students. Plaintiff tracked how many hours the work-study students worked and would fill out the students' time sheets for them. (Pl.'s Depo., ECF No. 30-1, at pp. 125-26.) Although Plaintiff did not direct the tasks of the work-study students, he did assign some tasks to work-study students, such as cleaning the lab, putting up sign-up sheets for printing, and looking at simple computer problems. (ECF No. 30-1, at p. 126.) Plaintiff helped Mari Hulick ("Hulick"), the chair of the Communications Design department and

Petersen's supervisor, prioritize and delegate the work of work-study students in communication design, but Plaintiff maintains that it was "ultimately [Hulick's] responsibility."  (ECF No. 30-1, at p. 148.)

Plaintiff worked in computer labs.  Plaintiff cleaned up the computer labs, fixed "obvious problems" with the computers, stocked printers with paper and ink, remained available for students and faculty that needed assistance, worked with vendors and suppliers, and troubleshot network issues.  (ECF No. 30-1, at p. 147.)  Plaintiff ordered supplies for the computer labs.  (ECF No. 30-1, at p. 147.)  Hulick had to approve Plaintiff's purchase orders.  (ECF No. 30-1, at p. 148-49.)  Hulick asked Plaintiff for recommendations on certain equipment purchases.  (ECF No. 30-1, at p. 150.)  Plaintiff handled purchasing items from vendors and determined how much of each item was needed.  (Pl.'s Depo., ECF No. 30-1, at p. 148.)  Plaintiff maintained the equipment; he said: "[y]ou know, coming in every day and making sure that the computer is not broken. That it boots up properly and that people can run software on it and that it functions in a day-to-day sort of way." (*Id*., at p. 148.)  Plaintiff downloaded software fixes, which he obtained from the internet or the IT department. (*Id*., at pp. 157-160.)  If Plaintiff could not get an image to install properly on a computer, he would contact the IT department to ask them what to do.  (*Id*., at p. 156.)

Plaintiff helped students, faculty, and staff.  Plaintiff created department videos for the communications design department twice.  (ECF No. 30-1, at p. 152-53.)  Plaintiff used pre-established software such as Adobe Acrobat or Photoshop to print large prints for the students (*Id*., at pp. 95-96.)  Plaintiff assisted students with printing problems.  Plaintiff said that the problems were "pretty straightforward, simple things to do. You go to a menu, you click on something, it automatically does it.") (*Id*., at pp. 98-99.)  Petersen kept track of how many prints each

student had done. (*Id*., at p. 111.) Petersen set up new students on the server by typing in their name so that the server could create an account. (Petersen Depo, at p. 85.)

Sometimes, Plaintiff would log-in to the server from home to see if it was working. (*Id*., at 138.) Dan Cuffaro ("Cuffaro"), Environment Chair of Design and Plaintiff's boss when he worked for Industrial Design department, would tell Plaintiff whether he had to come into work in the evenings to fix a problem or if it could wait until the next day. (ECF No. 30-1, at p. 127.)

The question remains whether these job duties qualify Plaintiff for either the administrative or executive exemptions in 29 U.S.C. § 213(a)(1).

### 1. Administrative Exception

29 C.F.R. § 541.200(a) provides that an employee must meet three elements to constitute an administrative employee: (1) the employee must be compensated on a salary or fee basis at a rate "not less than $455 per week;" (2) the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general operations of the employer or the employer's customers;" and (3) the employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance."

#### a. Salary

Plaintiff concedes that the salary requirement is not at issue in this case. (Pl.'s Opp. to Summ. Judg., ECF No. 36, at p. 7.)

#### b. Nature of Work

Defendant argues that Plaintiff's work was not of a manual nature and was directly related to the Institute of Art's management or general business operations. 29 C.F.R. § 541.201(a) and (c) explain what jobs fall within the administrative categorization. The sections state:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(a)-(c).

In *Koppinger v. American Interiors, Inc.*, 295 F. Supp.2d 797, 802 (N.D. Ohio 2003), Plaintiff's position as the sole information technology employee "involved maintaining, upgrading, and administrating the computer system." The court determined that "[p]laintiff's work, furthermore, was comprehensive in nature, and ranged from investigating problems, to considering possible solutions and implementing, in plaintiff's opinion, the best solution." The court found that the plaintiff did qualify for the administrative exception. In *Lutz v. Ameritech Corp.*, No. 98-2367, 2000 WL 245485 (6th Cir., Feb. 23, 2000), the Court found that the plaintiff fell within the administrative exemption. Lutz was "primarily responsible for providing access to the intra-office computer

network to various groups within Ameritech." *Id*., at * 2.  Lutz also implemented new programs and solved network problems.  *Id*.  The court reasoned that Lutz's job duties, particularly the fact that he was "accountable from end to end to insure that that network installation premise is up and running correctly," made it so he qualified under the second prong of the administrative exemption test.  *Id*.

Plaintiff argues that his job duties are distinguishable from plaintiffs' job duties in the cases cited above.  Plaintiff argues:

> in *Koppinger*, the plaintiff was the sole person in the company's computer department. He was responsible for the computer system from "end to end." He was involved with the high-end things such as upgrading the server and software, and acquiring computers. Likewise in *Lutz*, the plaintiff was the person primarily responsible for the company's intra-office computer network and implementing new programs.

(Pl.'s Opp. to Summ. Judg., ECF No. 36, at p. 9.)  Plaintiff further argues that "all complicated tasks, such as computer repair, software design, and computer program analysis, were handled by [the Institute of Art's] IT department."  (*Id.,* citing  Petersen dep. 109, 163-165, 171.)  In fact, Mr. Raymond Scragg, the Head of Human Resources and the person in charge of the Institute of Art's wage and hour compliance, admitted that Mr. Peterson is a non-exempt employee.  (Scragg Depo., ECF No.34-5, at p. 83, Exs. 14, 15.)  Furthermore, the court notes that the court in *Koppinger*, 295 F. Supp.2d at 802, classified installing hardware and software as manual work, and although this is not dispositive, it shows that these particular job duties of Plaintiff weigh in favor of finding him to be a non-exempt employee.

The court finds that a reasonable juror could find that the nature of Plaintiff's work did not qualify him as an exempt employee.  Again,"[t]he defendant must establish through 'clear and

affirmative evidence' that the employee meets every requirement of an exemption." *Ale*, 269 F.3d at 691 n. 4 (citation omitted).  Although Defendant cannot meet its evidentiary burden at this stage, the Plaintiff, also, cannot meet his burden.  Plaintiff cannot show that here is no genuine issue of material fact as to whether the nature of his work qualifies him for the administrative exception.  The court finds that a reasonable juror could find by the preponderance of the evidence that either party is entitled to a verdict on this issue.  *Anderson*, 477 U.S. at 252.

### c. Discretion and Independent Judgment

The exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  The exercise of discretion and independent judgment "implies that the employee has authority to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c).  The court in *Koppinger*, 295 F.Supp.2d at 804-05, sums up § 541.207 as generally stating "that an employee must exercise discretion (as opposed to skill, or general knowledge) on a relatively regular basis as to matters of consequence, but need not be the final approving official in the chain of command."

Defendant highlights the following as evidence that Plaintiff exercised discretion:

- Petersen admits that he learned his job responsibilities while working and that "professors and IT staff would sometimes show me things that they already knew."  (Petersen Depo., ECF No. 30-1, at pp. 37-38).

- Petersen admits that he would do his own independent research to "fix" software problems or learn how to use equipment. (*Id*., at pp. 38, 158-159).

- Petersen's duties required him to ensure that the computer labs were appropriately supplied

-10-

and that computers were not broken. (*Id*., at p. 148).

- Petersen would decide what to order, and Mari Hulick would sign the purchase order to approve it. (*Id*., at pp. 148-49).

- Petersen made recommendations regarding "big purchase[s]" and the implementation of new systems and computer software solutions. (*Id*., at pp. 149-50, 171; Petersen Depo., ECF No. 30-2, at pp. 271-73.)  His recommendations were typically approved by his supervisors. (Petersen Depo., ECF No. 30-1, 148-49.)

Plaintiff is similar to the plaintiff in *Koppinger* in certain ways because they both exercised independent judgment when deciding what supplies to order.  Coworkers of Koppinger would ask for his judgment in certain matters. *Koppinger*, 295 F.Supp.2d at 805.  This is also true in regard to Plaintiff in that he would research how to fix issues on his own and share the solutions with others, and his supervisors would often take his recommendations on purchases and how to implement new systems.  (Petersen Depo., ECF No. 30-1, 149-50, 171; Petersen Depo., ECF No. 30-2, at pp. 271-73.) .)  Koppinger would suggest new hardware for their employers, and their suggestions were often followed. *Koppinger*, 295 F.Supp.2d at 805.  Similarly, Plaintiff suggested purchases and new computer software to his supervisors.  (Petersen Depo., ECF No. 30-2, at pp. 271-73.)

However, Plaintiff is different than Koppinger in significant ways.  Koppinger was the only IT department employee at his workplace. *Koppinger*, 295 F.Supp.2d at 799.  As a result, he exercised discretion in determining the order of how he would handle problems, nobody prioritized his work for him, and Koppinger was responsible for his employer's computer system "from end to end." *Id*., at 799, 802.  In contrast, Plaintiff needed approval for purchases, was advised when to come to work in the evenings to fix problems, and he would rely on others in the IT department for

assistance. Therefore, this court cannot reach the same conclusion that was reached in *Koppinger*.

In addition, the fact that Plaintiff recommended hardware changes and purchases to his supervisors does not necessarily qualify him as an administrative employee. In *Jackson v. McKesson Health Solutions LLC*, No. Civ.A. 03-11177-DPW, 2004 WL 2453000, * 5 (D.Mass., 2004), the plaintiff stated in his deposition that, "[m]y role was to go out into the Web sites and investigate what hardware was available and make my recommendations either to other teammates or to Bill White who did the final approval for the purchases." The court found that there was a genuine issue of material fact as to whether the plaintiff was due overtime pay.

Therefore, the issue of whether Plaintiff falls into the administrative exemption cannot be decided as a matter of law. Facts support either conclusion. The facts themselves are not clear, especially in regard to Plaintiff's level of discretion for purchases, the degree to which he controls the work of work-study students, and to what degree Plaintiff chose when he had to work outside of standard working hours. Therefore, the court denies both Plaintiff's and Defendant's Motion for Summary Judgment on this issue.

### 2. Executive Exemption

The test for the executive exemption is articulated by 29 C.F.R. §541.100:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) [salary requirement not at issue here]
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

-12-

### a. Primary Duty

Managerial duties include activities such as "interviewing, selecting, and training of employees;…directing the work of employees;…planning work;… determining the type of materials, supplies, machinery, equipment or tools to be used [and] merchandise to be bought…" 29 C.F.R. § 541.102.  Notably, "[a]n employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement."  29 CFR § 541.104(c).

Defendant notes that Plaintiff stated on his resume that he directed work-study students. (Defs.' Mot. for Summ. Judg., ECF No. 32, at p. 10.)  The Court in *Ale*, 269 F.3d at 692, determined that a court must focus on a plaintiff's actual duties, not how his duties are classified.  Plaintiff stated during his deposition that he did not hire work-study students during the time he worked for Hulick. (Petersen Depo., at p. 249.)  When Plaintiff worked for Cuffaro, he did hire work-study students because Cuffaro instructed Plaintiff to sign up any student who wanted the position.  (*Id*., at pp. 249-50.)  Plaintiff further stated in his deposition and affidavit that he did not regularly meet with the work-study employees, did not discipline them, and he did not fire any of them.  (*Id*., at pp. 248, 250-51.)  Defendant states that Plaintiff monitored work-study employees' hours.  Nevertheless, in Plaintiff's Deposition, he said that he would not hold an orientation for new work-study students and that he would not regularly meet with the work-study students.  (*Id*., at pp. 250-51).  In addition, Matthew Hollern, the Dean of Faculty and Professor of Jewelry and Metals at the Institute of Art, stated that there is a department head who is in charge of each department, including the communication design department, industrial design department, and interior design department. (Hollern Depo., ECF No. 30-4, at pp. 25-26.)

Plaintiff primarily relies on *Ale*, 269 F.3d at 692, for the premise that not all supervisors are considered to have a managerial role:"[T]he shift supervisors did not set or adjust the hours of work, determine which employees manned which posts, or train employees. Although shift supervisors did spend some of their time supervising employees, this supervision was not managerial in nature because they had no control over the people they supervised." In *Ale*, the plaintiff's primary duties were to call people to come to work and to do the payroll, so even though the plaintiff supervised other employees, it was not his primary duty. Similarly, Plaintiff argues, his primary duty was to maintain the computer labs, not supervise work-study students. Plaintiff further maintains that the list of examples of managerial duties in 29 C.F.R. § 541.102(b) does not include Plaintiff's job duties. The statute lists, among other activities, selecting employees, apportioning work, recommending promotions, disciplining employees, and determining techniques or materials to be used as examples of managerial duties. *Id.* Finally, Plaintiff states that he does not meet the managerial standard articulated in *Walling v. General Indus. Co.*, 155 F.2d 711, 714 (6th Cir. 1946), namely that, "[i]t is an essential of executive duties . . . that there be active participation in controlled supervision and management of the business."

Defendant likens this case to *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp.2d 1010 (E.D. Mich. 2005), in which the court found that the plaintiff qualified for the executive exception. The court, however, finds that the facts of that case are distinguishable from the present case because the plaintiff in *Beauchamp* testified that he performed a number of functions that are explicitly cited in the FLSA as "management" duties. *Id.*, at p. 1016. The court explained that the plaintiff

> testified, for example, that he trained employees in the production department as to the proper use of tools and other equipment in performing their designated tasks. ... authorized requests for vacations and determined who should work overtime, making sure as to this latter

-14-

> determination that he was adhering to the terms of the collective bargaining agreement in assigning overtime according to worker seniority. ... conducted yearly reviews of the production department's hourly employees, that he disciplined these employees, and that he generally was responsible for ensuring that these workers adhered to the company's procedures and instructions. ... Finally, Plaintiff acknowledged that he regularly supervised perhaps as many as twenty employees.

*Id*.

Based on the facts, as discussed above, the court finds that a reasonable jury could find that Plaintiff did not work in a managerial role. He addressed and resolved concerns within the computer labs. (Petersen Depo., at p. 125.) He recommended changes in procedures to make the labs run more efficiently. (*Id.*, 165-166). Plaintiff determined which materials needed to be purchased. (*Id.*, at p. 148). These are not tasks that squarely fit into 29 C.F.R. § 541.102. Furthermore, the job responsibilities that may arguably be considered executive do not make Plaintiff fall within the executive exemption because Plaintiff was directed by supervisors to undertake managerial tasks. *See* 29 C.F.R. § 541.106 ("Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods."). Defendant's Motion for Summary Judgment is hereby denied in this regard.

In fact, the court finds that there is no genuine issue of material fact as to whether Plaintiff's primary duty was that of a manager. The facts show that he was not primarily in a managerial role, and as such, Plaintiff has shown as a matter of law that he cannot fall within the executive exception. Again, Defendant would need to show that Plaintiff met each prong of the executive exception's

analysis by clear and convincing evidence, so Plaintiff's ability to show that he cannot meet the first prong makes it impossible for Defendant to prevail on this issue. *Ale*, 269 F.3d at 691 n. 4 (internal citation omitted). Because the court finds that Plaintiff cannot as a matter of law fall within the executive exception, summary judgment is granted in Plaintiff's favor.

### b. Customarily and Regularly Directing the Work of Others

Because the court has determined that Defendant cannot prove that Plaintiff qualifies for the executive exception, it need not address any subsequent prongs of the analysis. However, the court finds that even upon analysis of the subsequent prongs, that Plaintiff would not fall within the executive exception. The court determines below that although there is a genuine issue of material fact as to whether Plaintiff directed the work of others, it is clear as a matter of law that Plaintiff did not have the requisite authority to hire or fire employees. Because Defendant must prove all three requirements of the exception, however, Defendant cannot prove as a matter of law that Plaintiff falls within the executive exception. *Ale*, 269 F.3d at 691 n. 4.

Plaintiff and Defendant disagree as to whether Plaintiff supervised two or more work-study students. Plaintiff argues that he did not supervise two or more employees, as is required by 29 C.F.R. §541.104 (a). Defendant argues that Plaintiff supervised 14 employees. (Def.'s Reply, ECF No. 39, at pp. 4-5, citing Petersen's Depo., at p. 125 and Paschal Aff., ECF No. 32-6.) Petersen's Deposition, at page 125, does not state the exact number of work–student students. On pages 123 and 124 of his Deposition, Plaintiff estimates that there were "less than ten" work-study students in the industrial design department and "a few more" in the communication design department. Attached to the Affidavit of Brenda Paschal, the Payroll and Accounting Administrator at the Institute of Art, are work-study students' time sheets.

In any event, the court finds that even if the number of work-study students amounted to at least two full-time employees to satisfy 29 C.F.R. §541.104 (a), there are facts that support a finding that Mr. Cuffaro and Ms. Hulick, not Plaintiff, supervised work-study employees. (Petersen's Depo., at pp. 248, 250-51.; (Hollern Depo., ECF No. 30-4, at pp. 25-26.)  However, "[n]othing in the governing regulations or relevant case law requires that a supervisor must have unfettered discretion in the performance of his management duties in order to be deemed an 'executive.'" *Beauchamp*, 357 F.Supp.2d at 1017.  Therefore, there is a genuine question of material fact as to whether Cuffaro's and Hulick's ultimate supervision of the work-study students is significant enough to mean that Plaintiff cannot be considered an executive.  The court finds that, based on the record, a reasonable juror could find that Plaintiff did not supervise the work-study students, but on the same token a reasonable juror could find that Plaintiff did exercise the requisite level of authority.

### c. Authority to Hire or Fire Employees

As discussed above, Petersen has hired work-study employees when he worked for Cuffaro, and Cuffaro instructed him to hire anybody who wanted to work.  Petersen further stated in his deposition that he did not hire anyone when he worked for Hulick. (Petersen Depo., at pp. 249-50.) The only fact that suggests that Plaintiff had the authority to hire students was that when Cuffaro told him to hire any student interested, he did so.  There are not facts on the record that support a finding that Plaintiff could fire any work-study student.  The court finds that the fact that Plaintiff hired students he was instructed to hire does not qualify Plaintiff for the executive exception.  It appears clear from the record that Plaintiff did not have the power to hire students without Cuffaro or Hulick first instructing him on hiring.  The court hereby grants summary judgment in Plaintiff's favor on the issue of whether he falls within the executive exception.

### 3. Summary of Court's Decision on Administrate and Executive Exceptions

To sum up, the court finds that there is a genuine issue of material fact as to whether Plaintiff qualifies for the administrative exception. The court also finds that Plaintiff cannot qualify for the executive exception as a matter of law. Plaintiff also presents arguments in his brief maintaining that he does not fall under the computer exception. (Pl.'s Br. for Summ. Judg., ECF No. 34, at p. 19.) As Defendant does not argue this point, the court need not address it.

### B. Ohio Law

Both parties agree that Plaintiff's state law claim is subject to the same analysis as his FLSA claim. (Def.'s Mot. for Summ. Judg., ECF No. 32, at p. 13 ("Ohio has adopted and codified the FLSA's provisions regarding overtime in Ohio Revised Code § 4111.03."); Pl.'s Mot. for Summ. Judg., ECF No. 24, at p. 14 ("Mr. Petersen has asserted claims under both the state and federal wage and hour laws for unpaid wages and overtime. (*See* Am. Compl., ECF No. 16). Ohio law expressly incorporates the provisions of federal law. See O.R.C. 4111.03(A).").) The court in *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, n.2 (6th Cir. 1997), stated that because Ohio Revised Code Section 4111.03 "parallels the FLSA, [the Court] will approach the issues raised on appeal in a unitary fashion." Therefore, the court's findings in regard to the FLSA apply to Plaintiff's claims under Ohio law.

### C. Breach of Contract Claim

Plaintiff alleges that his employment contract was violated when "Defendant required Plaintiffs to work beyond the hours and/or weeks specified in their contract and/or accepted the benefits of the putative class members working time beyond that specified in their contracts." (Am. Compl., ¶ 70.) Plaintiff is not seeking overtime pay in his breach of contract claim. (Pl.'s Opp. to

-18-

Mot. for Summ. Judg., ECF No. 36, at p. 12.)  Defendant argues that because Plaintiff's employment contract makes him an "at will" employee, he cannot prevail on a breach of contract claim.  In the alternative, Defendant argues that even if Plaintiff's offer letters amount to contracts for employment, the Institute of Art did not breach the terms of the contracts.

The contracts, which are a series of letters from Defendant to Plaintiff signed by Plaintiff, include an annual salary, how the salary breaks down per hour, and the number of hours Plaintiff is expected to work per week.  (*See* Letters Related to Employment: ECF No 16-1; ECF No. 16-2; 16-3; 16-4.)  Defendant maintains that it paid Plaintiff for all of the hours specified in the contract, and Plaintiff does not dispute this.  Thus, the contracted-for hours are not the hours for which Plaintiff maintains he was not paid.  The contracts simply do not contain terms regarding working extra hours.  The court notes that Plaintiff does not advance an argument that the terms of the contract changed based on practice.

Therefore, the court finds that it is not necessary to determine whether Plaintiff is an at-will employee or not because the offer letters do not contain terms about working hours beyond what the offer letters provide.  It is undisputed that Defendant paid Plaintiff the contractually agreed-upon amount for each year.  The court hereby finds that Plaintiff's breach of contract claim fails on the merits as a matter of law.

## IV. CONCLUSION

For the aforementioned reasons, the court hereby grants in part and denies in part Defendant's Motion for Summary Judgment (ECF No. 32), and grants in part and denies in part Plaintiff's Motion for Summary Judgment (ECF No. 34).  The court finds that Plaintiff prevails on the issue of whether he falls within the executive exception of the FLSA.  However, there is a

genuine issue of material fact as to whether Plaintiff qualifies for the administrative exception of the FLSA.  The court further finds that Defendant prevails on the breach of contract claim.

    IT IS SO ORDERED.

                                                      <u>/S/ SOLOMON OLIVER, JR.</u>
                                                      CHIEF JUDGE
                                                      UNITED STATES DISTRICT COURT

April 18, 2011